**PHILADELPHIA FRATERNAL ORDER OF CORRECTIONAL OFFICERS, Lorenzo North, Barbara Sturgis, Preston Corley, Melvin Carr, Cheryl Glenn, Dominique Mackey, David Weaver, William Dougherty, Petitioners**

v.

**Edward G. RENDELL, City of Philadelphia; Tom Ridge, Commonwealth of Pennsylvania; L. Dennis Martire; John Markle, Jr. and Edward Feehan, PLRB, Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 7, 1997.

Decided Oct. 3, 1997.

---

Steven David Masters, Philadelphia, for Petitioners.

Mark J. Foley, Philadelphia, for Respondents, Rendell and City of Philadelphia.

Samuel L. Spear, Philadelphia, for Intervenor, AFSCME, District Council 33.

Before DOYLE, SMITH, FRIEDMAN, KELLEY and FLAHERTY, JJ.

FRIEDMAN, Judge.

This case presents us with a constitutional challenge to the validity of a City of Philadelphia (City) ordinance enacted in 1961 (1961 Ordinance) and of section 2003 of the Public Employe Relations Act (PERA),[1] which, by saving the 1961 Ordinance, authorizes the City to recognize the American Federation of State, County and Municipal Employees, District Council 33, A.F.L.-C.I.O. (AFSCME or District Council 33) as the exclusive bargaining representative for City correctional em-

---

**1.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.2003.

ployees for purposes of collective bargaining between those employees and the City.

On December 16, 1996, the Philadelphia Fraternal Order of Correctional Officers (PFOCO) and its members, Lorenzo North, Barbara Sturgis, Preston Corley, Melvin Carr, Cheryl Glenn, Dominique Mackey, David Weaver, and William Dougherty (collectively, Petitioners),[2] filed a Verified Amended Complaint and Petition for Review (Complaint/Petition) against Edward G. Rendell, in his official capacity of Mayor of the City, and the City (together, City Defendants), and against Tom Ridge, in his official capacity as Governor of the Commonwealth of Pennsylvania, the Commonwealth, the Pennsylvania Labor Relations Board (PLRB), and L. Dennis Martire, John Markle, Jr. and Edward Feehan, in their official capacities as members of the PLRB (collectively, Commonwealth Defendants).[3] In the Complaint/Petition, Petitioners set forth an original action for declaratory, injunctive and compensatory relief, challenging the 1961 Ordinance and section 2003 of PERA on the grounds that they infringe on Petitioners' rights of association and deprive Petitioners of equal protection under the law. Additionally, Petitioners invoke this court's appellate jurisdiction, seeking to have this court set aside a PLRB order dismissing PFOCO's representation petition.

Petitioners claim that, by force of law, the individual Petitioners and other City correctional employees represented by District Council 33 and its affiliate AFSCME Local 159 have been, and continue to be, prohibited from freely choosing the labor organization to act as their collective voice in matters of labor relations with the City. Further,

Petitioners allege that, unless the City and Commonwealth Defendants are prevented from enforcing the provisions of the 1961 Ordinance and section 2003 of PERA, City correctional employees will continue to be deprived of their right to freely elect the employee organization of their choice, and PFOCO will continue to be deprived of its right to be fairly elected as the exclusive bargaining agent of the City correctional officers. (Complaint/Petition, paras. 45–46.) To this end, the Complaint/Petition challenges the constitutionality of the 1961 Ordinance and section 2003 of PERA, setting forth three counts for relief.

In Count One, raised against both the City Defendants and the Commonwealth Defendants, Petitioners assert that the 1961 Ordinance, section 2003 of PERA and the final order of the PLRB violate Petitioners' fundamental right of association without compelling justification, in contravention of Article I, section 7 of the Constitution of the Commonwealth of Pennsylvania. (Complaint/Petition, para. 48.) In Count Two, raised against the Commonwealth Defendants, Petitioners assert that the 1961 Ordinance, section 2003 of PERA and the final order of the PLRB deny Petitioners the right to freely choose their employee organization, in violation of PERA, and violate Petitioners' rights to equal protection under the law without compelling justification, in contravention of Article I, sections 1 and 26 of the Constitution of the Commonwealth of Pennsylvania. (Complaint/Petition, para. 50.) In Count Three, raised against the PLRB and individual Defendants Martire, Markle and Feehan, Petitioners allege that the final order of the

2. PFOCO, an unincorporated employee organization as that term is defined in section 301 of PERA, 43 P.S. § 1101.301(3), brought the action on its own behalf and on behalf of all of its members employed by the City as correctional employees. (Complaint/Petition, para. 3; Stipulation of Facts, No. 1.) The individually named Petitioners are all leaders of PFOCO: Lorenzo North is a member and Treasurer of PFOCO; Barbara Sturgis is a member and Secretary of PFOCO; Preston Corley is a member and Business Manager of PFOCO; Melvin Carr is a member and President of PFOCO; Cheryl Glenn is a member and Trustee of PFOCO; Dominique Mackey is a member and Trustee of PFOCO; David Weaver is a member and Trustee of PFO-

CO; and William Dougherty is a member and Vice–President of PFOCO. (Complaint/Petition, paras.4–11.) These individual Petitioners are all employed as correctional officers in the City's prison system; for purposes of collective bargaining, they are currently represented by AFSCME Local 159, an affiliate of District Council 33. (Stipulation of Facts, Nos. 2–3.)

3. Petitioners initially filed a Complaint and Petition for Review on November 7, 1996. Then, following the filing of preliminary objections by the City Defendants and the PLRB, Petitioners filed the present Complaint/Petition.

PLRB is erroneous, contrary to law, in violation of the Pennsylvania Constitution and against the clear and substantial weight of the evidence. (Complaint/Petition, para. 52.)

Based on these allegations, Petitioners request that this court: (A) enter an order declaring the 1961 Ordinance and section 2003 of PERA to be in violation of the Constitution of the Commonwealth of Pennsylvania; (B) enter an order restraining Defendants from enforcing, complying with or applying the 1961 ordinance and section 2003 of PERA as a bar to any other employee organization becoming the exclusive bargaining agent for City employees, in accordance with the relevant provisions of PERA governing representation petitions and elections; (C) enter an order setting aside the final order of the PLRB and directing the PLRB to conduct an election among the members of the bargaining unit as defined in the Petition for Representation Election; (D) award Petitioners any money damages that they have incurred as a result of the Defendants' unlawful policies; (E) award Petitioners their costs and disbursement in this action, including reasonable attorney's fees; and (F) grant such other relief as is appropriate and equitable.

The City Defendants filed preliminary objections to Count One of the Complaint/Petition, and the Commonwealth Defendants filed preliminary objections to Counts One and Two of the Complaint/Petition. In addition, AFSCME, which was granted intervenor status, filed a motion for summary relief, seeking dismissal of the entire action. Petitioners filed a consolidated response to the City Defendant's preliminary objections and to AFSCME's motion for summary relief and also filed a cross-motion for summary relief. Both sets of preliminary objections and the cross-motions for summary relief were consolidated for argument before this court and are now before us for disposition.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioners have sought previously to have the 1961 Ordinance, as saved by section 2003 of PERA, declared unconstitutional. *See Philadelphia Fraternal Order of*

*Correctional Officers v. Rendell,* No. 96–1834, 1996 WL 296538, 1996 U.S. Dist. LEXIS 7621, (E.D. Pa. May 31, 1996, *as amended,* August 14, 1996), ("the federal action"). In March 1996, Petitioners filed the federal action in the United States District Court for the Eastern District of Pennsylvania, naming as defendants the identical parties named as Defendants in the present case, and alleged that the courts' construction of the 1961 Ordinance and section 2003 of PERA violated Petitioners' right of association under the First Amendment to the United States Constitution (Count I), their right to equal protection under the Fourteenth Amendment to the United States Constitution (Count II), and their right to equal protection under Article I, sections 1 and 26 of the Pennsylvania Constitution (Count III). As in the present case, Petitioners sought declaratory, injunctive and compensatory relief based on these allegations. However, by order dated May 31, 1996, the district court granted the City Defendants' and Commonwealth Defendants' motions for summary judgment on each count of Petitioners' complaint. First, the district court rejected Petitioners' First Amendment claim, holding that there is no constitutionally protected right to choose a collective bargaining agent. at *6 (LEXIS 7621 at 25.) The court then rejected Petitioners' federal equal protection claim; determining that Petitioners' complaint involved neither a suspect class nor any fundamental rights, the court evaluated Petitioners' claim under the "rational relationship" test and concluded that the purposes set forth in the preamble to the 1961 Ordinance constituted legitimate government interests sufficient to meet that standard. at *11, *12 (LEXIS 7621 at 34, 40.) Applying the same analysis to Petitioners' state equal protection claim, the district court also found no violation of the Pennsylvania Constitution.

Following the issuance of this decision, Petitioners filed a motion to alter and amend judgment. Petitioners contended that, by virtue of the Eleventh Amendment, the district court lacked subject matter jurisdiction to consider Petitioners' state constitutional

claims against the Commonwealth Defendants once it had dismissed the federal constitutional claims; Petitioners also urged the district court to exercise its discretion to dismiss the state law claims against the City Defendants. The district court agreed in part and, in an amended decision, dismissed the state law claims against the Commonwealth Defendants without prejudice. However, the district court denied Petitioners' motion with respect to the City Defendants, rendering that judgment final. An appeal of the district court's decision is now pending before the United States Court of Appeals for the Third Circuit.

In the previous federal action, the parties submitted a Stipulation of Undisputed Facts, a copy of which has also been provided as part of the record to this court. Our recitation of facts is drawn from that stipulation together with relevant allegations from Petitioners' Complaint/Petition.

On April 4, 1961, Richardson Dilworth, then-Mayor of the City, signed into law the 1961 Ordinance entitled: "To authorize the Mayor to enter into an Agreement with District Council 33, American Federation of State, County, and Municipal Employees, A.F.L.-C.I.O., Philadelphia and Vicinity, regarding its representation of certain City employees." (Complaint/Petition, para. 15; Stipulation of Facts, No. 9.) The effect of the 1961 Ordinance, which still remains in effect as amended, was to codify under color of law the status of District Council 33 as the exclusive bargaining agent for the City's Civil Service employees.[4] Pursuant to the recognition conferred on District Council 33 by the 1961 Ordinance, the City and District Council 33 have entered a continuous series of written contracts, the most recent of which has been in force since July 1, 1996 and is due to expire on June 30, 2000. (Complaint/Petition, paras.16–17.)

On July 23, 1970, the Governor of Pennsylvania signed PERA into law. Under section 603 of PERA, 43 P.S. § 1101.603, a group of public employees who wish to remove an employee organization as their exclusive bargaining representative may file a rival representation petition with the PLRB. If the election conducted pursuant to this representation petition results in the rival organization's selection as representative, the new organization replaces the former organization as the employees' bargaining representative. (Complaint/Petition, para. 22.) However, section 2003 of PERA saved the 1961 Ordinance insofar as it is inconsistent with PERA provisions that otherwise would give the PLRB jurisdiction to entertain a representation petition and conduct a representation election among employees covered by the 1961 Ordinance. Section 2003 of PERA provides:

> Present provisions of an ordinance of the City of Philadelphia approved April 4, 1961, entitled 'An Ordinance to authorize the Mayor to enter into an agreement with District Council 33, American Federation of State, County and Municipal Employes, A.F.L.-C.I.O., Philadelphia and vicinity regarding its representation of certain City Employes,' which are inconsistent with the provisions of this act shall remain in full force and effect so long as the present provisions of that ordinance are valid and operative.

43 P.S. § 1101.2003.

This court interpreted this statutory savings provision in *Employes of the City of Philadelphia v. Pennsylvania Labor Relations Board*, 23 Pa.Cmwlth. 233, 350 A.2d 923 (1976), *petition for allowance of appeal denied*, No. 2390 Allocatur Dkt.1976 (Pa., filed May 25, 1976) (*Deputy Sheriff's Case*), holding that the PLRB lacked jurisdiction to consider a representation petition filed under

---

4. Excluded from the coverage of the 1961 Ordinance were the City's uniformed and investigatory personnel in the Police and Fire Departments, the Fairmount Park Commission, the District Attorney's Office and those Civil Service employees prohibited from union membership by other agreements between District Council 33 and the City. (Complaint/Petition, para.16.) However, the City's correctional employees, employed in the City's jails, correctional facilities and houses of correction, have always come within the scope of the 1961 Ordinance; consequently, these correctional employees have always been represented by District Council 33 for purposes of collective bargaining. Neither prior to, nor subsequent to, the enactment of the 1961 Ordinance has there been a representation election in the District Council 33 bargaining unit, including Local 159. (Complaint/Petition, para. 18; Stipulation of Facts, No. 10.)

PERA by a rival union seeking to represent City Deputy Sheriffs covered by the 1961 Ordinance. We determined that such employees could not change their exclusive bargaining representative by filing a petition for representation, as expressly provided for by PERA, because the 1961 Ordinance, as saved by section 2003 of PERA, acts as an absolute bar on those City employees' rights to select the labor organization of their choice for collective bargaining purposes. (Complaint/Petition, paras. 19–21.) Based on the *Deputy Sheriff's Case,* the PLRB consistently has refused to entertain representation petitions filed with respect to employees who fall within the scope of the 1961 Ordinance.[5] (Complaint/Petition, para. 23; Stipulation of Fact, No. 11.)

Mounting dissatisfaction with the level of representation by District Council 33 and its affiliate Local 159 led, in 1995, to the creation of PFOCO, and within only a few months, PFOCO had secured the support of a majority of the rank and file members of the bargaining unit.[6] (Complaint/Petition, paras.

31–33; Stipulation of Facts, No. 14.) On April 29, 1996,[7] PFOCO filed a petition for a representation election with the PLRB [8] and submitted authorization cards signed by well over a majority of the members of the bargaining unit currently represented by AFSCME Local 159. (Complaint/Petition, para. 39.)

On May 3, 1996, the Secretary of the PLRB issued a decision declining to direct a hearing on PFOCO's representation petition on the grounds that the PLRB lacked jurisdiction over the petition by virtue of the 1961 Ordinance referred to in section 2003 of PERA. PFOCO filed exceptions to the Secretary's determination, contending that the PLRB's and the courts' construction of the 1961 Ordinance and section 2003 of PERA violates the subject employees' right of association and equal protection under both the United States and Pennsylvania Constitutions. On October 8, 1996, the PLRB issued an order dismissing PFOCO's exceptions and rendering the decision of the Secretary absolute and final. (Complaint/Petition, paras.

---

**5.** In fact, the City's correctional employees already have sought unsuccessfully to elect a union of their choice as their exclusive bargaining representative. (Complaint/Petition, para. 25.) On April 27, 1992, the Philadelphia Correctional Officers Association (PCOA), an unincorporated employee organization distinct from PFOCO, filed a representation petition with the PLRB seeking to represent a unit of prison guards employed by the City who were then represented by AFSCME Local 159; PCOA's petition alleged that it had the support of over thirty percent of the correctional employees in the bargaining unit. (Complaint/Petition, para. 26; Stipulation of Facts, No. 21.) The PLRB, through its Secretary, dismissed PCOA's petition for representation, claiming that the PLRB lacked jurisdiction to conduct a representation proceeding among the petitioned-for employees because they were covered by the 1961 Ordinance, as saved by section 2003 of PERA. Based on the *Deputy Sheriff's Case,* the PLRB dismissed PCOA's appeal, and the trial court affirmed. This court affirmed the PLRB and trial court decisions in *Philadelphia Correctional Officers Association v. Pennsylvania Labor Relations Board et al.,* 667 A.2d 459 (Pa.Cmwlth.1995), *appeal denied,* 544 Pa. 639, 675 A.2d 1254 (1996), ruling that the 1961 Ordinance, as saved by section 2003 of PERA, deprived the PLRB of jurisdiction over PCOA's representation petition. However, in *Philadelphia Correctional Officers,* this court held that PCOA had waived its constitutional challenges to the 1961 ordinance and section 2003 of PERA and, thus, refused to consider them. Our

supreme court has since denied PCOA's petition for allowance of appeal from that decision. (Complaint/Petition, paras. 27–30; Stipulation of Facts, No. 23.)

**6.** No retaliatory action of any kind has been taken by the City or Commonwealth against any member of PFOCO as a result of membership in PFOCO, organizational efforts or expressions· of dissatisfaction with the representation provided by District Council 33. (Stipulation of Facts, No. 15.)

**7.** Beginning on April 1, 1996 and ending on May 1, 1996, PFOCO had the opportunity to petition for a representation election for the bargaining unit currently represented by AFSCME Local 159. Those dates represent the period prior to the expiration of the previous contract during which time a petition for election may be filed under section 605 of PERA, 43 P.S. § 1101.605. (Complaint/Petition, para. 38.)

**8.** PFOCO also sought to represent the correctional officers as police officers pursuant to Act of June 24, 1968, P.L. 237, as amended, 43 P.S. §§ 217.1–217.10 (Act 111), (Complaint/Petition, para. 39, Exhibit D); however, the PLRB rejected PFOCO's contention that the correctional officers are police for purposes of collective bargaining under Act 111. (Complaint/Petition, Exhibits E and F). PFOCO has not challenged this determination in this action.

40–41, Exhibits E and F.) In doing so, the PLRB relied upon the decision rendered in Petitioners' prior federal action, in which the district court rejected Petitioners' claim that the 1961 Ordinance and section 2003 of PERA violated its members' right of association under the First Amendment to the United States Constitution and their right to equal protection under both the Fourteenth Amendment of the United States Constitution and the equal protection provisions of Article I, sections 1 and 26 of the Pennsylvania Constitution.

Having provided the necessary background, we now address the matters before us.

### PRELIMINARY OBJECTIONS— CITY DEFENDANTS

In their preliminary objections, the City Defendants assert that the doctrine of res judicata bars Petitioners' freedom of association claim set forth in Count One of the Complaint/Petition, the only count brought against the City Defendants.

▌ Before we determine whether res judicata applies here, however, we will consider Petitioners' contention that City Defendants' res judicata challenge must be stricken because it was improperly raised in the form of a preliminary objection rather than pleaded in a responsive pleading as "New Matter." Pa. R.C.P. No. 1030(a). As a general rule, res judicata is an affirmative defense and should be pleaded as new matter; however, the proper method for challenging the procedural propriety of another party's preliminary objections raising res judicata is by filing preliminary objections to the challenged preliminary objections. Because Petitioners here did not file preliminary objections challenging the method the City Defendants used to assert res judicata, the challenge to that defect is deemed waived. *See* Pa. R.C.P. No. 1032(a); *Commonwealth ex rel. Corbett v. Desiderio*, 698 A.2d 134 (Pa.Cmwlth.1997); *Bradford County Citizens in Action v. Board of Commissioners of Bradford County*, 64 Pa.Cmwlth. 349, 439 A.2d 1346 (1982); *Swartz v. Masloff*, 62 Pa.Cmwlth. 522, 437 A.2d 472 (1981).

▌ Having determined that we can consider the City Defendants' preliminary objections, we next decide whether the doctrine of res judicata is applicable here. Under Pennsylvania law, the doctrine of res judicata provides that a final valid judgment on the merits by a court of competent jurisdiction precludes any future action between the parties and their privies on the same cause of action. *Dempsey v. Cessna Aircraft Co.*, 439 Pa. Superior Ct. 172, 653 A.2d 679 (1995), *appeal denied*, 541 Pa. 631, 663 A.2d 684 (1995); *Malone v. West Marlborough Township Board of Supervisors*, 145 Pa. Cmwlth. 466, 603 A.2d 708 (1992). A judgment is deemed final for purposes of res judicata or collateral estoppel unless or until it is reversed on appeal. *Shaffer v. Smith*, 543 Pa. 526, 673 A.2d 872 (1996); *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission*, 61 Pa.Cmwlth. 325, 433 A.2d 620 (1981). For res judicata to apply, the prior and present cases must share four "identities": (1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the capacity of the parties to sue or be sued. *Dempsey; Mason v. Workmen's Compensation Appeal Board (Hilti Fastening Systems Corp.)*, 657 A.2d 1020 (Pa. Cmwlth.1995), *appeal denied*, 542 Pa. 679, 668 A.2d 1140 (1995); *Miller v. Commonwealth*, 111 Pa.Cmwlth. 240, 533 A.2d 819 (1987). Further, res judicata bars subsequent litigation not only of issues litigated in the first proceeding but also issues which should have been previously litigated, if they were part of the same cause of action. *Commonwealth ex rel. Bloomsburg State College v. Porter*, 148 Pa.Cmwlth. 188, 610 A.2d 516, 520 (1992), *appeal denied*, 534 Pa. 650, 627 A.2d 181 (1993). Causes of action may be considered identical when, in both the current and prior proceedings, the subject matter and the ultimate issues are the same. *Miller.*

In the federal action, the district court rejected Petitioners' First Amendment claim and held that there is no constitutionally protected right to choose a collective bargaining agent. The City Defendants assert that Petitioners' freedom of association claim set forth in Count One of the Complaint/Peti-

tion involves the identical parties, is based on identical factual averments, and raises the same basic legal issue as the allegation made by Petitioners in Count I of the federal action. The only difference between the two actions is that, in the present action, Petitioners have asserted a violation of associational rights as protected by the state, rather than the federal, constitution. Thus, because the claim against the City set forth in Count One of the Complaint/Petition could have, and should have, been brought in the federal action, that count should be dismissed. We agree.

Count Two of the Complaint/Petition asserts the same equal protection claim under the Pennsylvania Constitution that Petitioners raised previously in Count III of the complaint in the prior federal action. Moreover, that state equal protection claim is necessarily premised, at least in part, upon Petitioners' claim that the 1961 Ordinance, as saved by section 2003 of PERA, deprives them of their constitutional rights to freedom of association. Thus, it is clear that Petitioners' cause of action in the prior federal litigation encompassed alleged deprivations of their rights under both the federal and state constitutions. Because, in the federal action, Petitioners chose to assert a violation of both state and federal equal protection rights, and in view of the fact that they asserted a violation of associational rights under the First Amendment, Petitioners clearly could, and should, have raised their freedom of association claim under the Pennsylvania Constitution in the federal action as well.

Petitioners concede that three of the four identities required for res judicata are present here, but contend that, because the identity of cause of action is missing, res judicata

cannot be applied. Petitioners maintain that their suit in federal court, in which they sought to vindicate their rights under the federal constitution pursuant to section 1983 of the Civil Rights Act, 42 U.S.C. § 1983 (1988), is a cause of action which has been recognized as separate and distinct from any state law causes of action that may arise from the same set of facts. Petitioners then go on to cite numerous cases standing for the proposition that federal and state constitutional claims may be deemed separate causes of action and, thus, may be brought in separate actions in federal and state courts. However, we are not swayed by Petitioners' argument. Even if state and federal causes of action may, or possibly should, be brought as separate actions, the fact remains that Petitioners chose to litigate both state and federal claims in the federal action. They cannot now avoid the consequences of that decision. Accordingly, we grant the City Defendants' preliminary objections to Count One of the Complaint/Petition.[9]

### PRELIMINARY OBJECTIONS—
### COMMONWEALTH
### DEFENDANTS

■ The Commonwealth Defendants have filed preliminary objections in the nature of a demurrer to Counts One and Two of the Complaint/Petition, seeking dismissal of those counts as failing to state a cause of action upon which relief can be granted.[10] The Commonwealth Defendants contend that the 1961 ordinance and section 2003 of PERA, which together preserve the exclusive bargaining representative status of AFSCME for certain City employees, including the correctional officers here, and precludes the PLRB from conducting a repre-

---

**9.** Although we believe that Petitioners' freedom of association claim set forth in Count One of the Complaint/Petition against the City Defendants can, and should, be dismissed on res judicata grounds, our discussion of the Commonwealth Defendants' preliminary objections makes it apparent that we could also dismiss this count against the City Defendants on the merits.

**10.** Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure, Pa.R.C.P. No. 1028(a)(4), permits a defendant to file a preliminary objection in the nature of a demurrer on the grounds that a plaintiff's pleading is legally insufficient. In re-

viewing the legal sufficiency of Counts One and Two of the Complaint/ Petition, we must accept as true all of the well-pleaded material facts set forth therein as well as all reasonable inferences that may be drawn from those facts. *Bower v. Bower*, 531 Pa. 54, 611 A.2d 181 (1992). Preliminary objections in the nature of a demurrer will be sustained only where the pleading is clearly insufficient to establish a right to relief, and any doubt must be resolved in favor of overruling the demurrer. *Gaster v. Township of Nether Providence*, 124 Pa.Cmwlth. 595, 556 A.2d 947 (1989).

sentation election among those employees, does not violate the Pennsylvania Constitution's provisions relating to free speech, free association and equal protection. The Commonwealth Defendants believe that this contention is evidenced by the fact that identical claims have been advanced and rejected under the First and Fourteenth Amendments to the United States Constitution and the equal protection provisions of the Pennsylvania Constitution, and nothing suggests that the Pennsylvania Constitution offers broader rights than those afforded by the United States Constitution.

## DEMURRER TO COUNT ONE

In Count One of the Complaint/Petition, Petitioners allege that the 1961 Ordinance and section 2003 of PERA violate Article I, section 7 of the Pennsylvania Constitution by depriving Petitioners of their fundamental right of association without compelling justification. The Commonwealth Defendants, however, assert that there is no constitutionally protected right to collectively bargain; to the contrary, any rights that an employee may have to bargain collectively with an employer are based purely upon a statutory grant of such rights. Thus, the Commonwealth Defendants maintain that Count One of the Complaint/Petition fails to state a claim upon which relief can be granted.

The Commonwealth Defendants note the obvious similarity between Petitioners' current contention and the claim they made under the First Amendment in the federal action, in which the district court, recognizing that there is no First Amendment right to collectively bargain, *Babbitt, et al. v. United Farm Workers National Union et al.*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979),[11] held that the right to choose a collective bargaining agent is not protected by the First Amendment.

Although recognizing that state constitutional provisions may provide broader free speech and assembly rights than the United States Constitution, the Commonwealth Defendants assert that Article I, section 7 of the Pennsylvania Constitution[12] does not provide any greater rights with respect to collective bargaining than those provided by the First Amendment of the United States Constitution. Indeed, the Commonwealth Defendants maintain that this conclusion is inherent in the district court's rejection of Petitioners' state equal protection claim in the federal action. The Commonwealth Defendants point out that the district court, in its analysis of Petitioners' state equal protection claim, examined the disparate treatment of employees covered by the 1961 Ordinance under the rational relationship test rather than the strict scrutiny test urged by Petitioners and, thus, implicitly rejected Petitioners' assertion that the courts' construction of section 2003 of PERA and the 1961 Ordinance impact a fundamental right under the

11. Although the First Amendment guarantees workers the right individually or collectively to voice their views to their employers, it does not give them the right to compel employers to listen to such views, or more specifically, to engage in the collective bargaining process. *Babbitt.* Thus, an employee organization, like PFOCO, has no First Amendment right to force an employer to listen to it; indeed, the state can require all communications to it be made by individuals. In *Smith*, the U.S. Supreme Court stated that the First Amendment does not impose any affirmative obligation on the government to listen, to respond or to recognize a labor organization and bargain with it.

12. This section provides:
Section 7. The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury; and in all indictments for libels the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

free speech and association provision of the Pennsylvania Constitution.

 We agree that, just as there is no fundamental right to engage in collective bargaining under the United States Constitution, the Petitioners have no constitutionally protected right to collectively bargain under the provisions of the Pennsylvania Constitution. *See Wilkinsburg Police Officers v. Commonwealth,* 129 Pa.Cmwlth. 47, 564 A.2d 1015 (1989), *aff'd,* 535 Pa. 425, 636 A.2d 134 (1993). In fact, however, Petitioners recognize that they have no federal or state constitutional right to compel the government to listen to, respond to, recognize or bargain with a labor union, and that the correctional officers' right to engage in collective bargaining has a purely statutory basis. Indeed, Petitioners claim that, contrary to the understanding of the Commonwealth Defendants, Petitioners do not premise their argument on the existence of a constitutional right to collectively bargain; rather, they challenge the violation of their rights to association resulting from the application and enforcement of the legislatively created collective bargaining process. While conceding that a state may refuse to grant its employees a statutory right to bargain collectively, Petitioners assert that, once a state enacts a system of collective bargaining, it may not prohibit its employees from freely choosing their own collective bargaining representative. Thus, Petitioners urge an approach to constitutional analysis similar to that used in *Com. by Packel v. Pennsylvania Interscholastic Athletic Association,* 18 Pa.Cmwlth. 45, 334 A.2d 839 (1975).

In *Packel,* the Pennsylvania Attorney General sought to invalidate a bylaw of the Pennsylvania Interscholastic Athletic Association (PIAA) which precluded girls from competing or practicing against boys in any athletic contest on grounds that it violated the equal protection clause of the Fourteenth Amendment of the United States Constitution and the Pennsylvania Equal Rights Amendment, Article I, section 28 of the Pennsylvania Constitution. To escape constitutional scrutiny, the PIAA argued that, because there was no legally cognizable right to participate in interscholastic sports, the PIAA fell outside the purview of the Equal Rights Amendment. However, this court stated:

> There is no fundamental right to engage in interscholastic sports, but once the state decides to permit such participation, it must do so on a basis which does not discriminate in violation of the constitution.

*Packel,* 334 A.2d at 842.

Based on *Packel,* Petitioners agree that the lack of a fundamental right to collectively bargain means that they could not compel the City or Commonwealth to grant them collective bargaining rights *if none existed;* however, because the 1961 Ordinance provides a legislatively created right of the City's workers to engage in collective bargaining, and because PERA grants all public employees such a legislatively created right, Petitioners maintain that the Pennsylvania Constitution imposes limitations on the existing system of collective bargaining. Through this suit, Petitioners seek to define those limitations. Thus, Petitioners argue that the issue in Count One is not whether a public employer can be compelled to listen to a rival union, but whether a public employer can compel its employees to speak only through the union selected by the government, prohibiting those employees from speaking through any other labor organization. Petitioners note that this is the first opportunity for this court to define the scope of a public employee's rights to association under the Pennsylvania Constitution,[13] and, in this re-

---

13. Pennsylvania courts already have recognized that a public employee's constitutional rights to freedom of association are impacted in the collective bargaining process, *see Zorica v. AFSCME District Council 33,* 686 A.2d 461 (Pa.Cmwlth. 1996); *Pennsylvania Labor Relations Board v. Eastern Lancaster County Education Association,* 58 Pa.Cmwlth. 78, 427 A.2d 305 (1981), *cert. denied,* 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982); however, until now, these rights have been viewed in terms of the First Amendment.

In *Philadelphia Correctional Officers,* this court made no rulings on PCOA's federal and state constitutional challenges to the 1961 ordinance and section 2003 of PERA because PCOA failed to raise this issue before the PLRB and the trial court. Here, PFOCO, which like PCOA, also claims to represent a majority of the City's correctional workers, brings another challenge to the 1961 ordinance and section 2003 of PERA,

gard, they argue that Pennsylvania's constitutional provisions guaranteeing free speech and associational rights can, and should, be held to provide more expansive individual rights than does its offspring, the First Amendment to the United States Constitution.[14]

Despite Petitioners' attempt to recast the issue by distinguishing the right to choose an exclusive bargaining representative from the right to engage in collective bargaining, we must conclude that, under the facts here, the distinction is purely semantic. Indeed, the undisputed facts clearly indicate that Petitioners have freely exercised their constitutional rights of association in that disgruntled City correctional employees, dissatisfied with AFSCME's representation, have formed a rival organization, PFOCO, without suffering any governmental interference with their organizational efforts or retaliation for their expressed dissatisfaction. What Petitioners have been unable, but now seek, to do is compel the City, through the PLRB certification process, to recognize and bargain with this rival union.

To accomplish this, Petitioners first acknowledge that the right to *associate* with labor organizations, which is protected by the First Amendment, is independent of the alleged right to compel a state to sit down at the bargaining table and negotiate. Petitioners, however, maintain that a bar on state-mandated compulsory union affiliation flows from the employee's fundamental constitutional right to associate with the bargaining representative of his or her choice.[15] Peti-

---

raising the identical constitutional challenges left unanswered in the prior case.

**14.** Petitioners maintain that there is no authority for the Commonwealth Defendants' assertion that the Pennsylvania Constitution affords no greater rights than those provided by the First Amendment with respect to collective bargaining. In support of their position to the contrary, Petitioners cite *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance Co.*, 512 Pa. 23, 515 A.2d 1331 (1986) (holding that a private shopping mall was not a public forum, so that individuals had no constitutionally protected right to solicit signatures for political purposes on the premises); *Commonwealth v. Tate*, 495 Pa. 158, 432 A.2d 1382 (1981) (holding that a private college which had made itself into a public forum by sponsoring a public event at which certain views would be expressed, could not, consistent with the constitutional guarantees of speech and assembly, prohibit persons from coming to an area of the college normally open to the public to present an alternate point of view); and *William Goldman Theatres, Inc. v. Dana*, 405 Pa. 83, 173 A.2d 59, *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961) (holding that a state requirement to submit motion pictures to a board of censors prior to exhibition was prohibited by Article I, section 7 of the Pennsylvania Constitution as an imposition of prior restraints upon the communication of thoughts and opinions). Petitioners concede that these cases do not directly address the labor relations sphere but contend that they enunciate constitutional doctrines which encompass the rights at issue here. However, although the cases cited by Petitioners indicate that the Pennsylvania Constitution *may* provide broader free speech and association rights than the United States Constitution and certainly deal with important constitutional rights, we do not believe they offer any particular support for

Petitioners' position that, in the context of labor relations, Pennsylvania's constitutional guarantees of free speech and association provide more expansive individual rights than the First Amendment to the United States Constitution.

**15.** Petitioners cite *Minnesota State Board for Com. Colleges v. Knight*, 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984), *Fraternal Order of Police v. Mayor, City Council, Ocean City, Maryland*, 916 F.2d 919 (4th Cir.1990), and *Labov v. Lalley*, 809 F.2d 220 (3d Cir.1987), in support of the proposition that the right of employees to choose their own spokesperson to advocate their collective views to their employer is protected by the constitutional rights of free speech and association. Although these cases do support the constitutional right of employees to *associate* with the labor union of their choice, we cannot agree that they promote the alleged right advanced by Petitioners to compel a public employer to hold a representation election and bargain collectively with the winner.

In *Knight*, college faculty instructors who were not members of the union selected as exclusive bargaining agent for professional employees challenged as unconstitutional provisions of the state labor relations act which permitted the employer to conduct "meet and confer" sessions on matters related to employment only with the selected union. In that case, the court found no First Amendment violation, concluding that the state had not restrained the instructors' freedom to speak on any education-related issue or to associate or not associate with whom they please. The court, relying on *Smith*, noted that the First Amendment only protects an employee's right to speak and associate free of government interference, but does not obligate the government to listen or respond to every idea. Thus, the court determined that a person's right to

tioners then cite numerous cases purporting to establish that, once a mechanism for collective bargaining has been statutorily granted, public employees have a constitutionally protected right to choose their exclusive bargaining representative free from government coercion. Specifically, Petitioners rely upon *Brown v. Alexander*, 718 F.2d 1417 (6th Cir. 1983), *Atkins v. Charlotte*, 296 F.Supp. 1068 (W.D.N.C.1969), *City and Borough of Sitka v. International Brotherhood of Electrical Workers*, 653 P.2d 332 (Alaska 1982), *Kenai Peninsula Borough School District, etc.*, 590 P.2d 437 (Alaska 1979), and *Civil Service Personnel Association, Inc. v. City of Akron*, 48 Ohio St.2d 25, 356 N.E.2d 300 (1976). We do not believe that these cases support a constitutional basis for the coupling of the associational right to join a union with the obligation of the public employer to bargain with the union selected by a majority of public employees in the present situation.[16]

Moreover, to the extent that these cases do support Petitioners' position,[17] their prece-

speak is not infringed when government simply ignores that person while listening to others. Thus, *Knight* does not support Petitioners' purported constitutional right to compel the City to bargain with PFOCO where, like the instructors in that case, Petitioners have been free to associate with whom they please and express their own ideas.

Similarly, in *Ocean City*, which relied on both *Smith* and *Knight*, the court upheld a charter provision which proscribed city officials from engaging in collective bargaining with city employees, concluding that, while the right to choose a spokesperson to advocate a group's collective views lies implicit in the speech and association rights guaranteed by the First Amendment, the First Amendment does not demand that government officials listen; accordingly, they are free to refuse to speak with whomever they please.

In *Labov*, the court held that efforts of public employees to associate for the purpose of collective bargaining involve associational interests protected from hostile state action by the First Amendment. However, in that case, employees were subjected to retaliation by the county sheriff in the form of deprivation of their state-created employment benefits when they attempted to unionize. Here, Petitioners have undertaken union organizing efforts without government interference or retaliation.

**16.** For example, *Brown* and *Atkins* both involved statutory provisions restricting *association* with particular labor organizations. As we have stated, however, this association right is not at stake in the present case. Indeed, we point out that, in *Brown*, although the court struck down a provision that prohibited employees from affiliating with particular unions, the court recognized that, where there is no restriction on freedom of speech or association, the state may differentiate between labor associations without infringing on constitutional rights. Similarly, in *Atkins*, the court held that a statutory provision prohibiting public employees from joining or maintaining membership in a union affiliated with any national or international labor union was void on its face as an abridgment of freedom of association; however, the court found nothing unconstitutional in a second provision outlawing collective bargaining agreements between the city government and labor unions, concluding that the United States Constitution does not entitle one to have a contract with a party who does not want it. Because the right to collective bargaining is statutory rather than constitutional, the court held that the state acted within its powers by refusing to enter into such agreements and declaring that intent by statute.

In *City of Akron*, a local affiliate of AFSCME, acting as the exclusive bargaining agent for certain employees of Akron, had been operating under a collective bargaining agreement with Akron. Prior to the onset of the union's bargaining for a new agreement, employees in certain city departments sought, but were denied, an election to determine their own collective bargaining agent. The Supreme Court of Ohio, in affirming the trial court, concluded that the employees were entitled to determine their bargaining agent by election and ordered that the election be held.

We note, however, that the court did not base its decision on Ohio's constitution, but, rather, upheld the employees' right to an election based on equitable principles. . In doing so, the court first noted that where a right is statutory, it should not be extended beyond the scope of the statute, however inequitable the result may seem. The court acknowledged that this rule is strictly applied when the rights of the parties are clearly defined and established, particularly where the source of that definition is a statutory provision. Finding that the rights of the parties were not thus delineated, the court held that broad equitable principles of fairness controlled. In contrast to *City of Akron*, the rights of City correctional employees here are clearly defined in the 1961 Ordinance, as saved by section 2003 of PERA; thus, as with *Brown* and *Atkins*, Petitioners cannot benefit from *City of Akron*.

**17.** *Kenai* and *City and Borough of Sitka* represent Petitioners' most persuasive authority for the proposition that an employee's constitutional freedom of affiliation is inseparable from the right to freely choose his or her representative at the bargaining table. Petitioners assert that the facts here are virtually identical to those in *Kenai* and *City and Borough of Sitka;* however, we disagree.

dential effect has since been brought into question. Indeed, several of the cases Petitioners rely upon have recently been considered in *Indiana State Teachers Association v. Board of School Commissioners of the City of Indianapolis,* 918 F.Supp. 266 (S.D.Ind.1996), *aff'd,* 101 F.3d 1179 (7th Cir. 1996), *(ISTA ).* In that case, the employer, like the City here, had long recognized and negotiated with a local affiliate of AFSCME as the bargaining representative of its non-professional employees and rejected a request by a rival organization for an election among those employees between it and the

In *Kenai,* a school board adopted a labor relations policy by which it bound itself to recognize and bargain collectively with an organization to be formed by a majority of the school district's non-certificated employees. The policy stipulated, however, that the school district would not negotiate with individuals who were not school district employees nor with an employee organization affiliated with any state or national labor union. When the association was organized, the school district recognized it as the employee bargaining agent. However, one month later, when the association chose to affiliate itself with the American Federation of Teachers (Federation), the school district refused to negotiate further and demanded that the association disaffiliate from the Federation. The court noted that the employees' right to compel their employer to collectively bargain arose solely out of the labor relations policy enacted by the school district, but concluded that, under the First Amendment, the school district could not grant the right to collectively bargain and simultaneously decree whom the employees could send to the bargaining table or with whom they could affiliate to effectuate their right under the labor policy.

We note that the school district in *Kenai* bound itself to collectively bargain with the representative chosen by a majority of employees, *as long as they did not affiliate with a state or national labor organization.* The City here, however, through its 1961 Ordinance, specified only one union with which it would agree to bargain, without providing that that union be elected by a majority of the covered employees. Thus, the City's refusal to bargain with PFOCO is based on the statutory provision limiting its collective bargaining obligation to negotiations with AFSCME. In contrast, in *Kenai,* the school district's refusal to bargain with the representative chosen by the employees was based solely on the employees' affiliation with a state and national labor organization.

Moreover, although conceding that the non-certificated employees were not among those within the ambit of the National Labor Relations Act (NLRA), 29 U.S.C. § 152(2) (1970), or the Alaska Public Employment Relations Act, AS 23.40.250(5), the court, in *Kenai,* nonetheless used the NLRA as grounds for recognizing an employees' First Amendment right to select representatives of their own choosing for collective bargaining. The court, noting that public employees have a constitutional right to affiliate with the union of their choice, found "no sound basis for distinguishing an employee's freedom in affiliation from the right to freely choose his or her representative at the bargaining table. The

two are inseparable under the National Labor Relations Act." *Id.* at 439. Here, City correctional officers are included under the ambit of PERA which, by virtue of section 2003, specifically limits their right to choose an exclusive bargaining representative.

In *City and Borough of Sitka,* the city of Sitka, prior to the enactment of Alaska's Public Employment Relations Act (APERA), adopted a charter requiring the Sitka Assembly to recognize employee organizations. Pursuant to this charter, Sitka established an employees' negotiating committee to meet with management, with each municipal department electing one representative to the committee. Some time later, Sitka passed an ordinance that allowed it to opt out of APERA. A labor organization that had been unsuccessfully trying for years to represent Sitka's electrical department employees challenged the constitutionality of Sitka's ordinance opting out of APERA and asserted that Sitka's charter required that the city recognize the labor organization as the bargaining agent for Sitka's electrical department employees. The court found that the Sitka ordinance properly exempted the city from the provisions of APERA, reasoning that, although a public employer could not opt out of APERA to avoid negotiating with certain unions once its employees have commenced organizational activities *in reliance on the rights granted under APERA,* the Sitka electrical employees were not acting in reliance on rights granted under that act since they had sought recognition long before the enactment of APERA. However, the court, while it did not conclude that the charter obliged Sitka to engage in collective bargaining, found that the city had violated its charter because the use of the plural in the charter clearly implied the formation and recognition of more than one labor organization. That is not the case here.

Like the electrical employees in *City and Borough of Sitka,* the City correctional employees here could not have organized PFOCO in reliance on rights granted under PERA because, from its inception, those employees covered by the 1961 Ordinance were excluded from PERA's provisions granting public employees the right to elect exclusive bargaining agents. Further, the 1961 Ordinance, while never prohibiting the formation of other labor organizations, never contemplated the recognition of more than one organization for collective bargaining purposes. Thus, the right of employees to choose a union to represent them at the bargaining table was not a right which was statutorily anticipated and subsequently denied.

AFSCME local. The court, rejecting the application of *City of Akron, Kenai* and *City and Borough of Sitka,* stated:

> [Those cases] fly in the face of binding Seventh Circuit and Supreme Court precedent which clearly establishes ... that the First Amendment goes no further than to establish the right to organize and speak without retaliation.
>
> . . . .
>
> Without a constitutional right to collectively bargain, there can be no corresponding constitutional right to select a bargaining representative.

*ISTA,* 918 F.Supp. at 269, 270.

Petitioners contend that *ISTA* actually supports their position because *ISTA* recognizes that if there is *no* statutory basis for asserting and enforcing employee collective bargaining rights, then employees have *no* constitutional right to select their own bargaining representative. Petitioners note that the school board in *ISTA* voluntarily recognized the union as its non-certified employees' exclusive bargaining agent, without establishing any statutory right of those employees to compel the school board to engage in collective bargaining. Thus, according to Petitioners, the court relied on the absence of any statutorily created right to collectively bargain to reject the non-certified employees' constitutional challenge. Petitioners reason that, whereas the employees in *ISTA* lacked any statutory right to compel a public employer to recognize and collectively bargain with the union chosen by the employees, Petitioners here already enjoy these established statutory rights under the 1961 Ordinance and PERA. Petitioners are incorrect in this assertion.

Petitioners maintain that they have undisputed statutory rights to collective bargaining in that, since 1961, the City has recognized the statutory right of its employees to speak through an exclusive bargaining representative, to compel the City to engage in collective bargaining and to enter into written agreements. Although this is undoubtedly true, we point out that those statutorily granted rights are not, and never were, unlimited. The 1961 Ordinance, while providing for collective bargaining for the City's civil service employees, only authorized the Mayor to enter into collective bargaining agreements with AFSCME District Council 33 regarding its representation of certain City employees. The enactment of PERA in 1970 did nothing to expand those rights. Section 2003 of PERA, by saving the 1961 Ordinance under which AFSCME acquired the exclusive right to represent the City's correctional officers, preserved the preexisting bargaining relationship between District Council 33 and the City and insulated City correctional officers from the election mechanism provided by PERA to other public employee groups covered by that act. Because the government had no constitutional obligation to provide any collective bargaining rights at all, it does not violate the constitution by offering them in this limited fashion. *See Babbitt.*

Petitioners remain free to associate with whomever they choose; the fact that the City did not authorize collective bargaining with the labor organization with which Petitioners have chosen to associate themselves raises no constitutional claim. As the Court in *Smith* stated:

> The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so. But the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it.
>
> . . . .
>
> Far from taking steps to prohibit or discourage union membership or association, all that the Commission has done in its challenged conduct is simply to ignore the union. That it is free to do.

*Id.* at 465, 466, 99 S.Ct. at 1828 (citations omitted).

Because we can discern no basis for a different interpretation under the Pennsylvania Constitution, we believe that the reasoning of these First Amendment cases applies with equal force here.

However, Petitioners assert that two overriding policy considerations, majority rule

and viewpoint discrimination, favor this court's extension of the fundamental right of public employees to *affiliate* with the union of their choice into the area of *choice of exclusive bargaining representative* under the Pennsylvania Constitution. With respect to the first of these considerations, Petitioners argue that the limitations and interferences on free speech rights inherent in the establishment of an exclusive bargaining agent can only be countenanced when employers recognize the exclusive bargaining representative chosen by the employees themselves. In that case, the infringement of free speech is justified by the cardinal collective bargaining principle of majority rule and the state's legitimate interest in ensuring that its public employers hear only one voice presenting the majority view of its employees. Based on this reasoning, Petitioners assert that there is simply no precedent or justification for imposing a bargaining representative for an extended period on an unwilling majority of workers. We believe that Petitioners' reasoning is flawed.

Initially, we note our agreement with the district court in the federal action that the cases relied on by Petitioners do not support Petitioners' contention that constitutionally guaranteed free speech rights necessitate a majority rule requirement in the context of labor relations; rather, these cases merely comment on the majority rule provisions of certain labor statutes.[18] (*See* at *7 n. 8, LEXIS 7621 at 23 n. 8.) Moreover, contrary to Petitioners' claims, we conclude that the statutory scheme set forth in the 1961 Ordinance, as saved by section 2003 of PERA, respects the principle of majority rule.

As justification for the Mayor's authorization to enter a collective bargaining agreement with District Council 33, the 1961 Ordinance provides in relevant part:

> Whereas, District Council 33 ... is the exclusive bargaining agent for certain Civil Service employees in the City; and

> Whereas, *District Council 33 has enrolled as Union members the majority of permanent, full-time employees of the City* ....

(City Defendants' preliminary objections, Exhibit A at 259–60.)[19] City correctional employees, represented by Local 159 of District Council 33, constitute only a portion of the City's civil service employees covered by the 1961 Ordinance. Recognizing that a majority of *all* of the City's permanent, full-time employees were District Council 33 members, the City properly placed those employees within the ambit of the 1961 Ordinance and designated District Council 33 as their exclusive bargaining agent; in taking this action, the City safeguarded its legitimate interest in ensuring that it would hear only one voice representing the majority view of its employees so that the City would not be overburdened by having to deal with labor-related matters in a piecemeal fashion.

However, even accepting the constitutional propriety of state-imposed union affiliation in

---

**18.** Petitioners cite *Knight, Emporium Capwell Co. v. Western Addition Community Organization,* 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975), *International Association of Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), and *Railway Emp. Dept. v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), *reh'g. denied,* 352 U.S. 859, 77 S.Ct. 22, 1 L.Ed.2d 69 (1956).

**19.** The 1961 Ordinance continues to set forth other reasons for enactment as follows:

> Whereas, Such an agreement will be beneficial to the City by simplifying and reducing the present cost of maintaining accounting records of Union dues checkoffs; and

> Whereas, The advantages of Union negotiation and bargaining for employee benefits have, in the past, accrued to certain non-Union as well as Union employees; and

> Whereas, Expanded Union representation of certain employees is desirable to insure continuing satisfactory and stabilized employer-employee relationships and improved work performance; and

> Whereas, It is desirable to insure uniformity in personnel administration to avoid variations in employee treatment; and

> Whereas, Union representation of employees is desirable in other personnel matters, such as disciplinary procedures and grievances; and

> Whereas, The City has found the Union helpful in obtaining strict adherence by its members to the Civil Service merit systems; and

> Whereas, The City desires to attract and retain qualified employees by providing those benefits usually attainable in non-governmental employer-employee relationships.

(City Defendants' preliminary objections, Exhibit A at 260.)

the abstract, Petitioners maintain that, where that union deprives its members of freedom of expression and penalizes them for expressing "hostile" views, the legislative scheme recognizing the union's exclusive status must be rejected as unconstitutional viewpoint discrimination. Petitioners admit that neither the City Defendants nor the Commonwealth Defendants have retaliated against them for their advocacy of a union other than AFSCME. Nevertheless, Petitioners assert that the actions of AFSCME, certainly indicate viewpoint-based discrimination where PFOCO members have been penalized and subject to discipline when their views differed from those of the government-sponsored union.[20] Thus, Petitioners reason that application of the 1961 Ordinance results in a chilling of the correctional officers' freedom to express political views in violation of the public policy of this Commonwealth.[21] To this assertion, we can only repeat our prior statement acknowledging that neither the City Defendants nor the Commonwealth Defendants have restricted City correctional officers from voicing their opinions on any labor relations matters or from aligning themselves, or refusing to align themselves, with the views of any labor organization.

Our supreme court has held that an act of the General Assembly will not be held unconstitutional unless it "clearly, palpably and plainly violates the constitution." *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963). Because the allegations in the Complaint/Petition do not set forth such a violation of Petitioners' rights of association under Article I, section 7 of the Pennsylvania Constitution, we grant the Commonwealth Defendants' preliminary objection to Count One of the Complaint/Petition.

### DEMURRER TO COUNT TWO

In Count Two of the Complaint/Petition, Petitioners allege that section 2003 of PERA and the 1961 Ordinance, as interpreted by this court, violate the equal protection provisions of Article I, sections 1 and 26 of the Pennsylvania Constitution.[22] The Commonwealth Defendants assert that this count also fails to support a cause of action upon which this court may grant relief. Based on our previous discussion, in which we concluded that section 2003 of PERA and the 1961

---

**20.** Petitioners refer to AFSCME's action taken against Petitioner Lorenzo North. Prior to his affiliation with PFOCO, North advocated the disaffiliation of Local 159 from AFSCME and its affiliation with another international union. In addition, North advocated enactment of a City ordinance to remove the City's correctional employees from the scope of the 1961 Ordinance. North expressed these viewpoints to Local 159 bargaining unit members openly and candidly when he ran for the Presidency of Local 159, which election occurred on March 15, 1994. The Local 159 Election Committee removed North's name from the ballot on March 2, 1994, and determined that he was ineligible to run for other Local 159 office on the basis that, "it is clear that [Lorenzo North] actively engaged in a campaign to remove the bargaining unit (AFSCME) representing the Correctional Officers at the Philadelphia prisons, and to take the Correctional Officers into a rival union." This internal union discipline was effected pursuant to Article X of the AFSCME International Constitution. North's removal from the ballot was upheld by a Local 159 trial board, and he was expelled from membership in Local 159 for the reasons stated by the Local 159 Election Committee and for the additional reason that he actively petitioned the Philadelphia City Council for passage of an amendment exempting the City's correctional employees from the scope of the 1961 Ordinance. North appealed the Local

159 trial board's decision to District Council 33, which declined to accept jurisdiction of the appeal and directed North to file his appeal with the International Union. AFSCME International Union upheld the decision of Local 159's trial board. (Complaint/Petition, paras. 35–37; Stipulation of Facts, Nos. 16–18.)

**21.** Contrary to the understanding of the district court in the federal action, (*see* at *6–*10, LEXIS 7621 at 25–33), Petitioners now claim that they do not attempt to attribute AFSCME's imposition of disciplinary procedures under its internal constitution to the City Defendants or Commonwealth Defendants by virtue of state action or agency doctrines.

**22.** These sections provide:

Section 1. All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Section 26. Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

Ordinance do not infringe on Petitioners' fundamental constitutional right of free speech and association under the Pennsylvania Constitution, we agree with the Commonwealth Defendants that the district court's equal protection analysis is persuasive authority to dismiss Count Two of Petitioners' Complaint/Petition as failing to state a claim upon which relief may be granted.

In the previous federal litigation, the district court rejected Petitioners' equal protection arguments under both the United States Constitution and Pennsylvania Constitution. In so doing, the district court reasoned that, because the challenged statutory scheme did not substantially impact on any fundamental constitutional right of free speech or association, and because there was no claim that the Petitioners belong to a protected class for equal protection analysis, consideration was confined to whether the statutory classification, i.e., City employees covered by the 1961 Ordinance, was rationally related to a legitimate governmental interest, under which standard legislative classifications are presumed to be valid. *See Lyng v. International Union, United Automobile Aerospace & Agricultural Implement Workers of America, UAW*, 485 U.S. 360, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988). The district court went on to conclude that the purposes of the 1961 Ordinance set forth in its preamble—reduction of administrative costs, stabilization of the employer/employee relationship, uniformity in personnel administration and consistency in the treatment of its employees—constituted legitimate governmental interests, and that the 1961 Ordinance and section 2003 of PERA had a rational relationship to the achievement of those legitimate governmental interests. Therefore, the district court found no violation of the equal protec-

tion clause of the Fourteenth Amendment. Finally, utilizing the same analysis for the state equal protection claim, in accordance with our supreme court's decision in *Love v. Borough of Stroudsburg*, 528 Pa. 320, 597 A.2d 1137 (1991),[23] the district court also dismissed Petitioners' claims that the 1961 Ordinance and section 2003 of PERA violated the equal protection provisions of the Pennsylvania Constitution. Contrary to Petitioners' assertions, we conclude, as did the district court, that by serving the purposes set forth in the preamble to the 1961 Ordinance, the challenged statutory scheme fosters legitimate governmental interests in a manner which is neither arbitrary nor unreasonable.

Accordingly, because section 2003 of PERA and the 1961 Ordinance do not violate the equal protection provisions of the Pennsylvania Constitution, we grant the Commonwealth Defendants' preliminary objection to Count Two of the Complaint/Petition.

### MOTION BY INTERVENOR FOR SUMMARY RELIEF

 Intervenor AFSCME, District Council 33 requests summary relief in its favor pursuant to Pa. R.A.P. 1532(b). AFSCME maintains that the parties here are identical to the parties in the federal action and, because the constitutional challenges asserted here in both the original and appellate claims are identical to those previously raised and rejected in the federal action, the doctrines of res judicata and collateral estoppel bar Petitioners from relitigating those constitutional claims. Thus, AFSCME asserts, it has a clear right to judgment in its favor and against Petitioners, dismissing the action.[24]

**23.** In *Love,* our supreme court noted that, in order for a classification to sustain constitutional attack under the rational basis test, it need only be directed at the accomplishment of a legitimate governmental interest, and do so in a manner which is not arbitrary or unreasonable.

**24.** Pa. R.A.P. 1532(b) entitles a party to the summary relief of having judgment entered in its favor where the right of the applicant thereto is clear. *Gelnett v. Department of Transportation,* 670 A.2d 217 (Pa.Cmwlth.1996). An application for summary relief is appropriate for actions such as this, a prima facie challenge to the con-

stitutionality of a statutory scheme, where no factual issues are in dispute. *Magazine Publishers v. Department of Revenue,* 151 Pa.Cmwlth. 592, 618 A.2d 1056 (1992), *aff'd,* 539 Pa. 563, 654 A.2d 519 (1995). A court should grant a motion for summary relief "where the moving party establishes that the case is clear and free from doubt, that there exist no genuine issues of material fact to be tried and that the movant is entitled to relief as a matter of law." *Id.* 618 A.2d at 1058–59 n. 3. Further, this court's scope of review of a final order of the PLRB is limited to determining whether its findings of fact are

Having already dismissed Counts One and Two of the Complaint/Petition, we need only consider AFSCME's motion as it relates to the appellate claims made by Petitioners in Count Three. In this regard, AFSCME simply notes that, in its final order, the PLRB found the district court's analysis of the state constitutional claims persuasive and, on that basis, dismissed Petitioners' exceptions regarding those same claims raised before the PLRB. AFSCME then asserts that Petitioners' Count Three of the Complaint/Petition, petitioning for review of the PLRB's final order, should be dismissed under the doctrine of collateral estoppel because the PLRB's resolution of the constitutional claims was correct and in accord with the district court's disposition resolving those claims against Petitioners in the federal action. *Balent v. City of Wilkes–Barre*, 542 Pa. 555, 669 A.2d 309 (1995).

Petitioners assert, however, that AFSCME's motion to dismiss the appellate portion of the Complaint/Petition must be rejected because collateral estoppel cannot be invoked to bar litigation of issues which were not actually litigated in the previous action. Collateral estoppel operates as a bar to relitigation of an issue only when: (1) the legal or factual issues are identical; (2) they were actually litigated; (3) they were essential to the judgment; and (4) they were material to the adjudication. *PMA Insurance Group v. Workmen's Compensation Appeal Board (Kelley)*, 665 A.2d 538 (Pa. Cmwlth.1995), *appeal denied*, 544 Pa. 618, 674 A.2d 1078 (1996). Petitioners thus claim that the doctrine cannot apply to the PLRB decision where none of the state constitutional issues, as presented there, were considered in that same form in the previous federal action. Petitioners essentially then repeat their prior argument that the current state constitutional claims present different legal issues from the state and federal constitutional claims previously litigated in the federal action. Because we have already concluded that the Pennsylvania Constitution affords no broader interpretation to the asserted claims of Petitioners than does the United States Constitution, we must agree that AFSCME's right to relief is clear, and we grant its motion for summary relief and dismiss the entire action. In doing so, we necessarily deny Petitioners' cross-motion for summary relief.

### ORDER

AND NOW, this 3rd day of October, 1997, upon consideration of the preliminary objections filed by the City Defendants, Edward G. Rendell and the City of Philadelphia, and the Commonwealth Defendants, Tom Ridge, the Commonwealth of Pennsylvania, L. Dennis Martire, John Markle Jr., and Edward Feehan and the Pennsylvania Labor Relations Board (PLRB), and the motion for summary relief filed by Intervenor American Federation of State, County and Municipal Employees, District Council 33, A.F.L.-C.I.O., and the cross-motion for summary relief filed by the Petitioners, Philadelphia Fraternal Order of Correctional Officers and Lorenzo North, Barbara Sturgis, Preston Corley, Melvin Carr, Cheryl Glenn, Dominique Mackey, David Weaver, and William Dougherty, we hereby:

1. sustain the City Defendants' preliminary objections;

2. sustain the Commonwealth Defendants' preliminary objections;

3. grant Intervenors' motion for summary relief, thereby affirming the order of the PLRB, dated October 8, 1996, and dismissing Petitioners' Verified Amended Complaint in its entirety; and

4. deny Petitioners' cross-motion for summary relief.

KELLEY, J., dissents with an opinion.

LEADBETTER, J., did not participate in the decision in this case.

KELLEY, Judge, dissenting.

Because I believe that section 2003 of the

supported by substantial evidence and whether the conclusions drawn from those findings are reasonable and not arbitrary, capricious or in-

correct as a matter of law. *Philadelphia Correctional Officers*.

PERA[1] deprives Petitioners of equal protection of the law as guaranteed by Article 1, Sections 1[2] and 26[3] of the Pennsylvania Constitution, I would deny the Commonwealth Defendants' preliminary objection in the nature of a demurrer to Count Two of the Petitioners' Complaint/Petition, and I would grant the Petitioners' request for summary relief on this basis. Accordingly, I respectfully dissent.

In outlining the circumstances under which the PERA was enacted by the General Assembly, the Pennsylvania Supreme Court has noted:

Prior to the passage of [the PERA] the prior law prohibited all strikes by public employes and did not require collective bargaining by public employers. The chaotic climate that resulted from this obviously intolerable situation occasioned the creation of a Governor's Commission to Revise the Public Employe Law of Pennsylvania. This commission, which is commonly referred to as the Hickman Commission, issued a report recommending the repeal of the then existing law and the passage of new law which would permit the right of all public employes to bargain collectively. In recommending this change the commission suggested the need for collective bargaining to restore harmony in the public sector and to eliminate the numerous illegal strikes and the widespread labor unrest.

"The 1947 Act does not require public employers to bargain collectively with their employes. This has led to an almost complete breakdown in communication where the public employer has not chosen to recognize the right of its employes to bargain collectively. In our judgment, this inability to bargain collectively has created more ill will and led to more friction and strikes than any other single cause."

The declaration of policy contained in [section 101 of the PERA] clearly establishes that the legislature concurred with the commission's belief that the right to collective bargaining was necessary to promote orderly and constructive relationships between public employers and employees.

In this setting we are forced to conclude that the legislature at the time of the passage of [the PERA] fully recognized that the right of collective bargaining was crucial to any attempt to restore harmony in the public sector. It would be absurd to suggest that the legislature deliberately intended to meet this pressing need by providing an illustory [sic] right of collective bargaining.

*Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 502–03, 337 A.2d 262, 266 (1975) (footnotes omitted).

As noted by the majority, under section 603 of the PERA,[4] a group of public employees who wish to remove an organization as their exclusive bargaining representative may file a rival representation petition with the PLRB. If the rival organization is selected as the representative in the election conducted pursuant to this petition, the rival

---

**1.** Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.2003. Section 2003 of the PERA states:

Present provisions of an ordinance of the City of Philadelphia approved April 4, 1961, entitled "An Ordinance to authorize the Mayor to enter into an agreement with District Council 33, American Federation of State, County and Municipal Employes, A.F.L.-C.I.O., Philadelphia and vicinity regarding its representation of certain City Employes," which are inconsistent with the provisions of this act shall remain in full force and effect so long as the present provisions of that ordinance are valid and operative.

**2.** Article 1, Section 1 of the Pennsylvania Constitution states:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

**3.** Article 1, Section 26 of the Pennsylvania Constitution states:

Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

**4.** 43 P.S. § 1101.603.

organization replaces the former organization as the employees' exclusive bargaining representative.

In this case, under the provisions of the 1961 Ordinance which is saved by section 2003, the exclusive bargaining representative of the Petitioners is District Council 33. Although District Council 33 garnered a majority of the votes of Petitioners' bargaining unit in 1961, in 1995 PFOCO received the majority of the votes of the unit due to dissatisfaction with District Council 33's representation. However, as also noted by the majority, the 1961 Ordinance, as saved by section 2003, acts as an absolute bar to Petitioners' right to change their exclusive bargaining representative under *Employes of the City of Philadelphia v. Pennsylvania Labor Relations Board,* 23 Pa.Cmwlth. 233, 350 A.2d 923 (1976).

Because District Council 33 was elected as the exclusive bargaining representative prior to the adoption of the 1961 Ordinance, the Petitioners are represented by an exclusive bargaining representative for which they never voted. In addition, even though they are dissatisfied with District Council 33's representation, under the 1961 Ordinance and section 2003 they are precluded from removing this representative. Moreover, their inability to remove District Council 33 as their representative will continue until their employer, the City of Philadelphia, amends its 1961 Ordinance. Thus, as long as the *City of Philadelphia* is satisfied with District Council 33's representation of the Petitioners, District Council 33 will remain as their exclusive bargaining representative.

To summarize, in the instant case we are faced with an anomalous situation in which: the employees are represented by an exclusive bargaining representative for which they have never voted; the employees are precluded from removing this exclusive bargaining representative due to an ordinance enacted by their employer; and the employees' exclusive bargaining representative is beholden to their employer, and not the employees whose interests they purport to represent. Certainly, any collective bargaining rights which are exercised by the employees in such a scheme are entirely illusory, and such a scheme does nothing to further the laudable purposes of the PERA.

In rejecting the Petitioners' claim that this statutory scheme offends their equal protection rights under the Pennsylvania Constitution, the majority adopts the federal district court's conclusion that the purposes of the 1961 Ordinance set forth in its preamble, *i.e.,* reduction of administrative costs, stabilization of the employer/employee relationship, uniformity in personnel administration and consistency in the treatment of its employees, constitute legitimate governmental interests. Majority Opinion, p. 617. The majority also finds that the 1961 Ordinance and section 2003 of the PERA bear a rational relationship to the achievement of these legitimate interests. *Id.* Indeed, the majority finds "that by serving the purposes set forth in the preamble to the 1961 Ordinance, the challenged statutory scheme fosters legitimate governmental interests in a manner which is neither arbitrary nor unreasonable." *Id.,* p. 617. I find such a determination to be untenable.

Clearly, requiring employees to be represented by an exclusive bargaining representative which they did not elect and which is beholden to the employer, and precluding the employees from ever removing this representative, in no way advances the stabilization of the employer/employee relationship. Any collective bargaining rights which exist in such a case are clearly illusory, and do not promote any of the purported goals which the PERA was enacted to achieve.

In sum, I am convinced that the provisions of Section 2003, which classifies the Petitioners differently from all other public employees in this Commonwealth and precludes them from exercising the collective bargaining rights which all other public employees enjoy, are eminently arbitrary and unreasonable and deny the Petitioners the equal protection of the law as guaranteed by Article 1, Sections 1 and 26 of the Pennsylvania Constitution. Accordingly, I would deny the Commonwealth Defendants' preliminary objection in the nature of a demurrer to Count Two of the Petitioners' Complaint/Petition, and I

would grant the Petitioners' request for summary relief on this basis.